UNITED STATES of America, Appellee,

v.

Jack Edward GALARDI, Appellant.

UNITED STATES of America, Appellee,

v.

Angel Jerrold GALARDI, Appellant.

UNITED STATES of America, Appellee,

v.

Peter Michael LAFKAS, Appellant.

Nos. 72–2817, 72–2743, 72–2777.

United States Court of Appeals, Ninth Circuit.

April 4, 1973.

Rehearing Denied May 17, 1973.

William C. Miller, Los Angeles, Cal., for appellant, Jack Edward Galardi.

William D. Keller, U. S. Atty., Eric A. Nobles, Asst. U. S. Atty., Crim. Div., David H. Fox, Asst. U. S. Atty., Asst. Chief, Crim. Div., Los Angeles, Cal., for appellee.

Michael F. Richman (argued), Ball, Hunt, Hart, Brown & Baerwitz, Long Beach, Cal., for appellant, Lafkas.

Michael D. Nasatir (argued), Nasatir, Sherman & Hirsch, Beverly Hills, Cal., for appellant, Angel Jerrold Galardi.

Before BROWNING, KILKENNY and TRASK, Circuit Judges.

KILKENNY, Circuit Judge:

Appellants appeal from certain judgments of conviction and sentences. Count One charges the Galardis with conspiracies in violation of 18 U.S.C. § 371; Counts Two and Four charge the Galardis with violations of 18 U.S.C. § 2115 and 18 U.S.C. § 2 in aiding and abetting another in forcibly breaking into a Post Office building; Counts Three and Five charge the Galardis with a violation of 18 U.S.C. § 641 in receiving stolen United States Postal Money Orders; Count Six charges the Galardis and appellant Lafkas with a violation of 18 U.S.C. § 371 in conspiring to commit an offense against the United States by transporting in foreign commerce certain United States Postal Money Orders of a value exceeding $5,000.00, which money orders had been stolen; Count Seven charges appellant Lafkas with a violation of 18 U.S.C. § 2314 and 18 U. S.C. § 2 in aiding and abetting appellant, Jack Edward Galardi, in transporting in foreign commerce postal money orders of a value exceeding $5,000.00. Additionally, Lee Spencer Parker was named as a co-defendant in Counts One through Six. Prior to trial, he entered a plea of guilty to Counts One, Two and Four and then appeared as a principal witness for the government. Angel Jerrold Galardi was sentenced to imprisonment for a term of five years on each of the Counts One through Six with the sentences to run concurrently, a total period of incarceration of five years. Jack Edward Galardi was sentenced to imprisonment for a term of five years on each of the Counts One through Seven with the sentences to run concurrently, a total period of incarceration of five years. Peter Michael Lafkas was sentenced to imprisonment for a term of four years on each of Counts Six and Seven with the sentences to run concurrently, a total period of incarceration of four years.

## THE GALARDI APPEALS

Inasmuch as the Galardi appeals present essentially the same contentions, we shall treat them together.

The evidence, viewed in a light most favorable to appellee, Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), Vitello v. United States, 425 F.2d 416, 421 (CA9 1970), cert. denied 400 U.S. 822, 91 S.Ct. 43, 27 L.Ed.2d 50 (1970), convincingly establishes that the Galardis actively participated in the robbery of two United States Post Offices in California during the summer of 1968. Stolen in the robberies were blank United States Postal Money Orders with a potential value of in excess of $200,000.00. The Galardis hid the money orders on the premises of a bar and warehouse which they owned in Long Beach. Subsequently, they entered into an agreement with appellant Lafkas to transport the money orders to Viet Nam where Lafkas would cash them on the black money market. Following through on this arrangement, over 1,600 of the stolen money orders were cashed in the Far East for more

than $160,000.00. The money orders were recovered and received in evidence during the course of the trial. On a substantial number of the orders were the fingerprints of the appellants.

## CONTENTIONS

■ (1). In claiming unreasonable pre-indictment delay, appellants point to the fact that the crime was committed in the summer of 1968 and that they were not indicted until September, 1971. The appellee responds by saying that much of the government's evidence was not secured until a few months prior to the indictment. It wasn't until May 24, 1971, that the co-conspirator Parker signed a sworn statement with reference to appellants' participation in the crime. As we read the record, the appellants have not brought themselves within the exceptions stated in United States v. Marion, 404 U.S. 307, 320–323, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), by showing that they were in any way prejudiced by the delay. The mere dimming of a memory is not sufficient. United States v. Griffin, 464 F.2d 1352, 1354 (CA9 1972). The assertion that a missing witness might have been useful does not show the "actual prejudice" required by *Marion*.

■ (2) Appellants' argument on post-indictment delay is also without merit. The record makes it clear that much of the delay was occasioned by a belief on the part of the United States Attorney that appellants wished to follow the procedure outlined in Rule 20, F.R.Crim.P. The appellants, upon arrest, were immediately admitted to bail. The trial judge found that appellants had shown no prejudice by the delay and that the claim of dimmed memory was conclusory and insufficient. His finding and conclusion are well supported by the record and by the authorities. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); United States v. Lewis, 406 F.2d 486 (CA7 1969), cert. denied 394 U.S. 1013, 89 S. Ct. 1630, 23 L.Ed.2d 39.

■ (3) Co-defendant Parker appeared as a witness for the government. During the course of his examination, the defense made reference to an alleged inconsistency between his testimony and his prior written statements. Later, the statements were admitted in evidence over appellants' objections. The judge ruled that appellants had emphasized an inconsistency between the statements and the testimony in the record. The record supports this view. In these circumstances, the statements were properly admitted. Kaneshiro v. United States, 445 F.2d 1266 (CA9 1971), cert. denied 404 U.S. 992, 92 S.Ct. 537, 30 L. Ed.2d 543.

■ (4) Next, appellants attempt to utilize Lenske v. United States, 383 F.2d 20 (CA9 1967), in their argument that the testimony before the grand jury should have been recorded. The author of *Lenske* criticized the government for recording and using only a part of the grand jury testimony. Tersely stated, *Lenske* has no application. Appellants do not argue that the facts of this case present "a clear indication of prejudice." United States v. Thoresen, 428 F.2d 654, 666 (CA9 1970).

■■ (5) Appellants would have us abandon our time honored rule that the uncorroborated testimony of an accomplice is sufficient to convict. Such an action would require *in banc* consideration. Aside from that fact, the evidence of Parker, the accomplice, is amply corroborated by other evidence, for example, the fingerprints on the Orders. In any event, we are not inclined to depart from the rule stated in Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442, 495 (1917); United States v. Hibler, 463 F.2d 455, 458 (CA9 1972), and authorities therein cited. There is nothing in this record which would indicate a possible miscarriage of justice, such as mentioned in *Hibler*, p. 459.

(6) Although the trial judge castigated counsel for Angel Galardi for continually ignoring the court's order with

reference to responding to objections, and the judge at one point indicated that he might be compelled to employ a contempt proceeding, our examination of the record convinces us that the court's remarks were justified. Moreover, the record convincingly demonstrates that counsel was in no way intimidated by these remarks.

### THE LAFKAS APPEAL

The Lafkas challenge to the convictions under Counts Six[1] and Seven calls for the construction of 18 U.S.C. § 2314, as applied to the record before us. In this argument, he concedes that the money orders were stolen and were transported in foreign commerce in violation of the first paragraph of § 2314,[2] and that the proof demonstrates that the money orders were altered before they were transported in foreign commerce and, consequently, fell within the exclusion of the section.[3] The challenge involves the basic facts and a study of the history of the legislation.

The basic facts are simple. The money orders were "in blank" when stolen. The Galardis, with stolen equipment, filled in the value on each bond at $100.-00. The money orders were forged and altered before they left the United States and placed in foreign commerce. United States Money Orders are "obligations" or "other securities" of the United States within the meaning of 18 U.S. C. § 2311, defining securities. See Nelson v. United States, 406 F.2d 1136, 1138 (CA10 1969); United States v. Powers, 437 F.2d 1160, 1161 (CA9 1971) [American Express Money Orders]. Clearly, the stolen money orders were forged and altered securities of the United States within the meaning of the

exclusion to the statute unless, as argued by the government, the exclusion has no application to the paragraph making it a crime to transport stolen securities in foreign commerce.

The legislation in question is a splendid example of what happens to statutes when an exclusion or exception is taken out of context and placed with its initial subject and other existing laws in an overall revision or codification. On June 25, 1948, the Congress of the United States passed an Act to ". . . revise, codify and enact into positive law, Title 18 of the United States Code, entitled 'Crimes and Criminal Procedure'". In this revision and codification, the Congress passed the present Section 2314, which is a combination of previously distinct offenses patterned into one section. See 62 Stat. 683, 806, 807.

A casual look into the statute's history reveals that the parent[4] of the paragraph of the statute under which Lafkas was indicted *and the exclusion* were part and parcel of the *same section*. The applicable section [53 Stat. 1178, Act of August 3, 1939] reads as follows:

### "AN ACT

To amend the National Stolen Property Act.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That section 3 of the National Stolen Property Act, approved May 22, 1934 (48 Stat. 794; U.S.C., title 18, sec. 415), be, and the same is hereby, amended to read as follows:

'SEC. 3. Whoever shall transport or cause to be transported in interstate or foreign commerce any goods,

---

1. Also, inferentially challenged by the Galardis.

2. * * * * *

"Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud; . . . "

3. * * * * *

"This section shall not apply to any falsely made, forged, altered, counterfeited or spurious representation of an obligation or other security of the United States, . . . "

4. The previous statute did not have the exclusion. 48 Stat. 794.

wares, or merchandise, securities, or money, of the value of $5,000 or more theretofore stolen, feloniously converted, or taken feloniously by fraud or with intent to steal or purloin, knowing the same to have been so stolen, feloniously converted, or taken, or whoever with unlawful or fraudulent intent shall transport or cause to be transported in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities, knowing the same to have been falsely made, forged, altered, or counterfeited, or whoever with unlawful or fraudulent intent shall transport, or cause to be transported in interstate or foreign commerce, any bed piece, bed plate, roll, plate, die, seal, stone, type, or other tool, implement, or thing used or fitted to be used in falsely making, forging, altering, or counterfeiting any security, or any part thereof, shall be punished by a fine of not more than $10,000 or by imprisonment for not more than ten years, or both: *Provided, That the provisions of this section shall not apply to any falsely made, forged, altered, counterfeited, or spurious representation of (1) an "obligation or other security of the United States" as defined in section 147 of the Criminal Code (U.S.C., title 18, sec. 261) or*

*(2) an obligation, bond,* certificate, security, treasury note, bill, promise to pay, or bank note, issued by any "foreign government" as defined in the Act of June 15, 1917, title VIII, section 4 (U.S.C., title 18, sec. 288), or by a bank or corporation of any foreign country.'" [Emphasis supplied.]

18 U.S.C. § 261 defining "obligation or other security of the United States" mentioned in the initial legislation is now 18 U.S.C. § 8.[5]

To be noted is the fact that the language of the present exclusion ". . . an obligation or other security of the United States . . ." is precisely the same as the language of the initial exclusion, the enactment of August 3, 1939.

The legislative background [6] leading up to the passage of the 1939 amendment makes it apparent that the Congress intended to exclude falsely made, forged, altered or counterfeited securities of the United States from what is now, with slight modification, the first paragraph of § 2314. From that report and the amendment itself, it is manifest that the Congress intended to include for the first time ". . . transportation of falsely made, forged, altered or counterfeited securities . . .", and at the same time determined that this inclusion should not apply to United

5. 18 U.S.C. § 8.
"§ 8. *Obligation or other security of the United States defined*

The term 'obligation or other security of the United States' includes all bonds, certificates of indebtedness, national bank currency, Federal Reserve notes, Federal Reserve bank notes, coupons, United States notes, Treasury notes, gold certificates, silver certificates, fractional notes, certificates of deposit, bills, checks, or drafts for money, drawn by or upon authorized officers of the United States, stamps and other representatives of value, of whatever denomination, issued under any Act of Congress, and canceled United States stamps."

6. We quote from the report of the Committee on the Judiciary of the House.
\* \* \* \* \*

"Section 1
Section 3 of the Stolen Property Act makes it a Federal criminal offense knowingly to transport in interstate or foreign commerce stolen property, securities, or money of the value of $5,000 or more. This section of the law is amended by section 1 of the reported bill to include such transportation of property, securities, or money of the same minimum value which have been feloniously converted, *and also to include transportation of falsely made, forged, altered, or counterfeited securities of the apparent or purported value of $5,000 or more. Counterfeited securities of the United States and foreign governments are exempted by a proviso because they are dealt with adequately by other provisions of existing law.*" [Emphasis supplied.] [H.R.Rep.No.422, 76th Cong., 1st Sess. (1939)].

States obligations for the reason that existing statutes adequately dealt with trafficking in such securities. The Attorney General of the United States, in a letter to William B. Bankhead, Speaker of the House of Representatives, from which we quote in relevant part, expressed the same viewpoint:

\*　　\*　　\*　　\*　　\*

"It is also desirable to include the transportation of counterfeit securities within the prohibitions of the statute. *It need not, however, embrace counterfeit Government obligations or counterfeit foreign obligations, as the statutes relating to counterfeiting penalize their possession.*" H.R.Rep.No.422, 76th Cong., 1st Sess. (1939). [Emphasis supplied.]

The Attorney General directed a letter, using the same language, to Henry F. Asher, the Chairman of the Senate Judiciary Committee, containing the same language as used in the communication to Speaker Bankhead.

 Under the provisions of 18 U.S.C. § 471,[7] anyone who, with intent to defraud, falsely makes, forges, counterfeits or alters any obligation or other security of the United States is guilty of a crime. This law was passed on March 4, 1909, 35 Stat. 1115, long prior to the 1939 legislation and, no doubt, was one of the laws to which the legislative history makes reference. 18 U.S.C. § 500 making it a crime for any one to falsely alter in any material respect any money order is another statute under which appellants could have been indicted. In other words, one who forges or alters an obligation or other security of the United States, or falsely alters a money order, is guilty of a crime without the necessity of crossing a state line. To invoke the Commerce Clause of the Constitution in order to provide federal jurisdiction, in these circumstances, would be an exercise in futility.

Worthy of more than just casual notice is the fact that the use of the language *"this section"* in the exclusion was carried through in the codification and revision in 1948. Clearly, the exclusion was intended to apply to each paragraph, including the first. Aside from the clarity with which the congressional history exposes the congressional intent, we find no vagueness or ambiguity in the statute itself. The appellee argues that the exclusion is inapplicable to the present case for the reason that the appellant was indicted for transporting stolen money orders, not falsely made United States Postal Money Orders. The answer to the argument is that the language of the exclusion ". . . *this section* . . ." is all inclusive and applies to the paragraph under which the indictment was returned with the same degree of exclusion as it does to others.

 Even if we could say that there was some doubt as to the meaning of the exclusion, the government would still be in trouble. It is well settled that any ambiguity or vagueness in a criminal statute must be resolved in favor of lenity. Rewis v. United States, 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971); United States v. Campos-Serrano, 404 U.S. 293, 92 S.Ct. 471, 30 L.Ed.2d 457 (1971); United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971). As recently as February 22, 1973, the Supreme Court in United States v. Emmons, 410 U.S. 396, 93 S.Ct. 1007, 35 L.Ed.2d 379, has reaffirmed the rule stating: ". . . this being a criminal statute, it must be strictly construed, and any ambiguity must be resolved in favor of lenity. . . ."

 Finally, the government argues that even though the exclusion might prevent appellants' prosecution under Count Seven, charging a violation

───

7. 18 U.S.C. § 471.

"§ 471. *Obligations or securities of the United States*
Whoever, with intent to defraud, falsely makes, forges, counterfeits, or alters any obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both."

of § 2314, nevertheless, Count Six, the conspiracy count, must stand.

The government's argument falls of its own weight. It should require no citation of authority to say that a person cannot conspire to commit a crime against the United States when the facts reveal there could be no violation of the statute under which the conspiracy is charged. If, as we have just held, the exclusion prevents prosecution under § 2314, then the appellants cannot be guilty of conspiring to commit that offense against the United States. They are charged only with conspiring to violate 18 U.S.C. § 2314. That section does not apply to falsely made and altered obligations of the United States. Although the case is factually distinguishable, the language of Justice Stewart in Ingram v. United States, 360 U.S. 672, 680, 79 S.Ct. 1314, 1320, 3 L.Ed.2d 1503 (1958), ". . . Smith and Law were not liable for the wagering tax. . . . They could not, therefore, have been convicted of the crime which they were charged with *having conspired to commit.** To sustain their conviction on this record would be to make of the crime of conspiracy just that 'dragnet to draw in all substantive crimes' against which the Court warned in . . .", is very much in point and persuades us to the conclusion just reached. United States v. Smith, 200 F.Supp. 227 (E.D. Tenn.1961), construing 18 U.S.C. § 2314 on a conspiracy charge in connection with falsely made obligations of a foreign corporation [Canada] is also in point. Obviously, the conspiracy charge cannot stand.

## OTHER CONTENTIONS

Appellants' other contentions with reference to: (1) prosecutorial misconduct, (2) Parker's motives for testifying, (3) alleged hearsay within hearsay, (4) alleged declarations after the conspiracy had ended, (5) rulings on cross-examination of Parker, and (6) instructions as to money order valuation, are either pat-

ently groundless or the errors, if any, clearly harmless under Rule 52(a), F.R. Crim.P.

## CONCLUSION

The judgments and sentences against Jack Edward Galardi and Angel Jerrold Galardi under Counts One, Two, Three, Four and Five are affirmed. The judgments and sentences of Angel Jerrold Galardi, Jack Edward Galardi and Peter Michael Lafkas under Count Six are reversed. The judgments and sentences of Jack Edward Galardi and Peter Michael Lafkas under Count Seven are reversed.

It is so ordered.