UNITED STATES of America,
Plaintiff-Appellee,

v.

John Franklin DURLAND,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Richard Morton BLUMENTHAL,
Defendant-Appellant.

Nos. 77–1180, 77–1189.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted April 17, 1978.
Decided May 1, 1978.
Rehearing Denied June 6, 1978.

Rod W. Snow, Asst. U. S. Atty., Denver, Colo. (Joseph F. Dolan, U. S. Atty., Denver, Colo., on the brief), for plaintiff-appellee.

Robert S. Berger of Davies & Saint-Veltri, Denver, Colo., for defendants-appellants.

Before BARRETT, DOYLE and LOGAN, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

These are consolidated appeals in the above-captioned cases.

In No. 77–1180, Durland seeks reversal of his December 14, 1976 conviction in the United States District Court for the District of Colorado, on the charge of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). The original

charge was against Durland and one Ronald Ward Blunt. Count I charged them with distributing cocaine; Count II charged Durland with possession of six and one-half ounces of cocaine with intent to distribute; and Count III charged Durland and Blunt with conspiring to distribute cocaine, in violation of 21 U.S.C. § 846 and § 841(a)(1).

At a pretrial hearing, Judge Matsch, after having heard testimony, dismissed Count III as to Blunt in accordance with an agreement made between Blunt and the DEA agent. Blunt's motion to suppress statements he had made after arrest was granted. On the other hand, Durland's motion to suppress the items taken from Durland's automobile was denied. A severance as between Durland and Blunt was granted.

At trial, the court dismissed Counts I and III of the indictment as to Durland. The jury returned a verdict of guilty on Count II, possession with intent to distribute cocaine.

The operative facts are as follows. On August 13, 1976, Agent Lamberson met with Blunt in a Boulder motel room to receive an ounce of cocaine and to arrange for the purchase of seven additional ounces. On that occasion, Lamberson testified that Blunt called the party who was to deliver the additional cocaine and addressed him as "John." Blunt explained that he had done business with the person he was calling previously, and that he would arrive in a beige colored, fairly new BMW automobile. Blunt was then placed under arrest, and Lamberson informed the other agents who were on surveillance of the planned delivery and they proceeded to set up the surveillance at the spot agreed upon for delivery. After the vehicle had arrived, Lamberson told Durland that he was dissatisfied with the quality of the cocaine that he had just purchased. Durland thereupon replied that no one else had complained of the quality and that if Lamberson was dissatisfied he could return the cocaine to Durland. Upon being asked by Lamberson to see the remaining seven ounces, Durland looked down at a brown manilla folder which was between the seats of his vehicle. At that point, two surveillance cars pulled up to make the arrest and Lamberson removed his revolver and advised Durland that he was under arrest. Durland sped away in his car.

He was followed by Agent Duer, who had come in to block the escape of the car. A chase was engaged in until Durland got stuck in the traffic at an intersection. He was then removed from the car and Duer drove it from the scene. On the way to the motel, Duer noticed the brown manilla folder between the seats and he recovered it upon reaching the motel.

An expert witness testified as to the similarity, from a field analysis, between the one ounce of cocaine received from Blunt and the seven ounces recovered from Durland's automobile. Detailed similarities were described to support this conclusion.

The contentions which are advanced are, first, that the trial court erred in denying the motion to suppress the cocaine which was seized. The basis for this is that it was taken in violation of the Fourth Amendment.

The second contention is that it was error to allow the hearsay statements of the alleged co-conspirator, Blunt, into evidence through Lamberson's testimony. The basis for this is that there was a failure of proof as to the existence of the conspiracy.

I.

*The contention that there was an unlawful search and seizure is without merit.*

The contention is that the envelope which was found between the seats could not be examined until such time as a search warrant had been obtained. We disagree. The total circumstances have to be considered. This includes the fact that the Agent Duer was maintaining a surveillance on the delivery by Durland of the cocaine. When the beige BMW arrived with Durland, Duer closed in to assist in the arrest and the seizure. This effort was temporarily thwarted. However, there was a hot pursuit by Duer and an arrest when Durland was trapped at an intersection in

heavy traffic. There was no break in the chain of events between the surveillance, the escape and the flight of Durland, and the final arrest of Durland. The brown envelope had been in plain view of Agent Lamberson just prior to the flight and the contraband had been identified by the act of Durland.[1] Duer took charge of the automobile after the arrest and drove it away from the intersection to a place where he could examine the envelope. Was he required to go get a warrant before looking inside the envelope? We say no. He had custody and control of it and this custody and control was a direct result of the arrest. As we see it, then, the seizure of the envelope and the examination of it were within the authority of the officer.

The Supreme Court in *Harris v. United States*, 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1967), upheld the receipt in evidence of a registration card found in an impounded car. The card was in plain view when the officer opened the door in order to roll up the window and lock it.

Similarly, in *United States v. Roe*, 495 F.2d 600 (10th Cir. 1974), *cert. denied*, 419 U.S. 1024, 95 S.Ct. 107, 42 L.Ed.2d 92 (1974), this court upheld the receipt in evidence of a sawed-off shotgun found by police when a trunk was opened to allow the defendant's companions to remove personal effects.

We are also aware of the fact that the mobility of the auto creates a special problem. *See Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), and *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). It is discussed in *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977).

As a result of our consideration of the facts and of the rulings in these cases, we conclude that the seizure of the envelope which was found in plain view in the automobile was valid. Also, it was proper to examine its contents for the contraband which the agents were seeking in connection with the arrest of Durland.

## II.

*The underlying evidence sufficiently established a conspiracy so as to render admissible the extrajudicial statements of Blunt.*

■ There was independent evidence that the defendant and Blunt were acting in concert. Perhaps the strongest fact in the case is that Durland appeared when Blunt said he would in the beige colored BMW. There is also the circumstantial inference to be drawn from the fact that Blunt introduced Lamberson to Durland, the driver of the BMW. Lamberson spoke to Durland through the window of the vehicle and advised the latter of his dissatisfaction with the one ounce of cocaine already furnished. Durland stated that that could be returned, an inculpatory admission. Furthermore, when Lamberson asked to see the remaining seven ounces of cocaine, Durland looked down at the brown manilla folder laying between the bucket seats. Lamberson said that Durland became very nervous. The attempted flight by Durland after Lamberson placed him under arrest is also inculpatory evidence of the conspiracy. The fact that these actions on the part of Durland, which show his complicity with Blunt, took place after the statements by Blunt, does not prevent the statements from being admissible as statements of a co-conspirator. *See* Rule 801(d)(2)(E) of the Federal Rules of Evidence.

It is generally held that the above-mentioned provision of the Rules of Evidence is applicable so as to admit statements of co-conspirators, where it appears from the evidence that they were acting in concert, even though the conspiracy is not in accordance with the charge of conspiracy or even though a conspiracy has not been charged. Since there was ample foundation evidence offered as to the existence of a conspiracy between defendant and Blunt, it follows

---

1. The collective information of the agents can be considered in assessing probable cause for the later "search" by Duer (if confiscation of the cocaine constitutes a search at all). *White-*

*ly v. Warden*, 401 U.S. 560, 568, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *United States v. Regan*, 525 F.2d 1151 (8th Cir. 1975).

that Blunt's statement to Agent Lamberson was properly admitted. *See United States v. Pennett,* 496 F.2d 293 (10th Cir. 1974); *United States v. Lemon,* 497 F.2d 854 (10th Cir. 1974); *United States v. Katz,* 535 F.2d 593 (10th Cir. 1976), holding that admission of co-conspirator's hearsay statements· before defendant had been shown to have been involved in the conspiracy is harmless error, if it is error, when the government introduces independent evidence at a later time establishing the defendant's involvement.

In sum, the foundation evidence was adequate, consisting as it did of circumstances, many of which were provided by Durland himself. Since it appears beyond question that Blunt was in league with Durland, Blunt's statements were plainly admissible.

The judgment of the district court is affirmed.

In No. 77–1189—*U. S. A. v. Richard Morton Blumenthal,* defendant was tried for and convicted of distribution of cocaine, a violation of 21 U.S.C. § 841(a)(1). At trial the defendant was charged with both conspiracy and distribution. However, the conspiracy count was dismissed by the trial court. Blumenthal's codefendant was Lisabeth Bertles.

As in the companion case involving Durland, the Agent was Lamberson. He first met Blumenthal August 12, 1976, at the latter's residence outside Boulder, Colorado. On that occasion they discussed the possibility of Lamberson's purchasing four pounds of cocaine. Blumenthal furnished Lamberson with a sample of cocaine for the purpose of testing it. This sample was introduced at trial. Later that evening the two met again and further discussed the purchase of four pounds and reached an agreement as to that. Later that same evening, Lamberson accompanied two other individuals, not agents (compatriots of Blumenthal), to an apartment that Blumenthal had arranged to use for completion of the transaction. One of these individuals brought a shotgun as "insurance." Arrangements were made at this time for Blumenthal and Lamberson to go to the residence of John Bertles, where Lamberson was to receive an initial one pound of cocaine from Lisabeth Bertles.

Blumenthal, Lamberson, and DEA agents then proceeded to the Bertles' residence, where they were met by Lisabeth Bertles. She produced one pound of alleged cocaine which Lamberson tested. The results of this test were negative, but Blumenthal and Lisabeth Bertles maintained that it was the same cocaine as that which Blumenthal had furnished Lamberson. Lisabeth Bertles furnished Lamberson a sample of this for further testing. This was admitted into evidence as Exhibit 2.

The following day, August 13, Lamberson again met with Blumenthal, and Blumenthal's codefendants Freedman and Whitsett, at a Boulder motel room. On this occasion Blumenthal gave Lamberson a set of scales and a plastic bag containing what appeared to be a pound of cocaine. This last quantity was introduced into evidence as Exhibit 4. It gave what appeared to be a positive test result. Blumenthal then requested that he be paid his share and requested also that Lamberson conclude the transaction as quickly as possible. At this juncture Blumenthal, Freedman and Whitsett were placed under arrest.

At the trial an expert on behalf of the government identified the exhibits as cocaine.

The contentions advanced on this appeal are very similar to those which are urged in No. 77–1180, *U. S. A. v. John Franklin Durland.* The principal issue is whether the testimony and exhibits introduced to prove a conspiracy were relevant and whether they constituted a sufficient basis for admitting extrajudicial statements which would, but for a conspiracy, be hearsay evidence. Exhibits objected to are 1, 2 and 3. Three, however, was not admitted. It is said that 1 and 2 became irrelevant when the conspiracy count was dismissed. It is also contended that Exhibit 2 was admissible only as to Lisabeth Bertles. The fact that the conspiracy count had been dismissed is, as we have seen, immaterial

since it is irrelevant to the proof of conspiracy for the purpose of admission of acts and statements of co-conspirators.

■ Second, Rule 801(d)(2)(E) of the Federal Rules of Evidence recognizes statements of co-conspirators as an exception to the prohibition against hearsay, and even though there is not a conspiracy charge, the evidence is admissible where existence of the conspiracy is independently established.

■ Third, there was ample evidence of a conspiracy between Blumenthal and Lisabeth Bertles so that acts and statements of one during the continuation of the conspiracy were admissible against the other. The particular items of testimony and evidence objected to are:

1. The use by Freedman and Whitsett of a 12-gauge shotgun for security during the negotiations between Blumenthal and Agent Lamberson.

2. Mrs. Bertles' production of one pound of alleged cocaine, scales, water and tin foil for Agent Lamberson on August 12.

3. Mrs. Bertles and Whitsett telling Lamberson by telephone that the cocaine at the Bertles house was good quality.

4. Mrs. Bertles telling Lamberson that he could have a sample of the cocaine.

5. Freedman and Whitsett calling Lamberson and telling him to meet them at the Boulder motel on August 13.

The acts of the parties which went into proving the conspiracy included: the presence of Freedman and Whitsett with the shotgun during the negotiations (this was solid evidence that they were acting in concert with Blumenthal); the fact that Blumenthal led Lamberson to the Bertles' residence in Louisville (this was evidence of the existence of a conspiracy between Blumenthal and Mrs. Bertles); the telephone call from Mrs. Bertles and Whitsett which assured Lamberson that the cocaine was good (the conversation was objective evidence of the existence of the conspiracy.)

The foregoing evidence that a conspiracy existed justified receiving the statements of Mrs. Bertles to Lamberson that he could have a sample of the cocaine. The call from Freedman and Whitsett to Lamberson was also admissible as a statement from participants in the conspiracy.

■ It is also said that it was error to receive the sample, including that which was given to Lamberson by Blumenthal at the first meeting and that which was taken from Mrs. Bertles on August 12, which was admitted as Exhibit 2. We must disagree. These items also corroborated the existence of a conspiracy.

Since we are of the opinion that the evidence received was competent and relevant, there is no necessity for considering the alternative theories offered by the government to justify the admission of this evidence.

The judgment of the district court is affirmed