**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James Wilbur REECE and Richard W.**
**Tomlinson, Defendants-Appellants.**

**Nos. 78–1671 and 78–1672.**

United States Court of Appeals,
Tenth Circuit.

Argued Sept. 11, 1979.

Decided Jan. 18, 1980.

John Oliver Martin, Asst. U. S. Atty., Kansas City, Kan. (James P. Buchele, U. S. Atty., Topeka, Kan., and Terrance J. Wear, Sp. Asst. U. S. Atty., Washington, D. C., on brief), for plaintiff-appellee.

Gerald L. Goodell, Topeka, Kan. (Goodell, Stratton, Edmonds, Palmer & Wright, Topeka, Kan., on brief), for James Wilbur Reece, defendant-appellant.

Michael Lerner, Kansas City, Kan., for Richard W. Tomlinson, defendant-appellant, and adopted brief filed by defendant-appellant Reece..

Before SETH, Chief Judge, and McWILLIAMS and McKAY, Circuit Judges.

McWILLIAMS, Circuit Judge.

Reece and Tomlinson were convicted by a jury on ninety-one counts of mail fraud. 18 U.S.C. § 1341. The indictment charged the two defendants with using the mail in connection with a scheme to defraud their employer, Fleming Foods Company of: (1) its right to have its business conducted honestly; (2) its right to the loyal, disinterested and unbiased services of the two defendants who were employed as purchasing agents by Fleming Foods; and (3) its right to secret money and profits obtained by the defendants in the course of the performance of their official duties for Fleming Foods. Each count involved a different mailing. Perhaps the principal point raised on appeal concerns the sufficiency of the evidence to support the convictions. Counsel argues that the defendants' actions, which are not really in great dispute, simply do not come within the mail fraud statute.

Fleming Foods is a wholesale grocery business with headquarters in Topeka, Kansas. Reece and Tomlinson were both longtime employees of Fleming Foods in the meat purchasing department. Reece was director of meat procurement operations and worked out of Fleming's offices in Topeka. Tomlinson had overall responsibility for the selection of beef carcasses used in Fleming's operations, and performed his services out of Fleming's office in St. Joseph, Missouri.

Reece and Tomlinson devised a scheme to supplement the salary and bonuses which they received from Fleming by demanding, and receiving, so-called "brokerage fees" from certain packers who sold beef trimmings to Fleming. Tomlinson traveled to National Beef Packing Company at Liberal, Kansas, and to Missouri Beef Packers, Inc. at Rock Port, Missouri and spoke with sales representatives for each company. Tomlinson agreed to buy beef trimmings on behalf of Fleming if the two suppliers would, in return, agree to pay Tomlinson and Reece a so-called meat brokerage fee of $.15 per hundredweight on all beef trimmings pur-

chased by Fleming. Pursuant to such understanding, beef trimmings were purchased by Tomlinson and Reece for and on behalf of Fleming from National Beef and Missouri Beef Packers, and Missouri Beef's successor, World Wide Meats. The brokerage fees were made payable to Midwest Selection Service, a partnership formed by Reece and Tomlinson. In connection with Midwest's "billings" to National Beef, Missouri Beef and World Wide Meats, the mails were used. Some $29,000 in brokerage fees were received by Reece and Tomlinson during the period of time from April 1971 through August 1973. None of these monies were turned over to Fleming Foods.

Reece and Tomlinson did not advise their employer, Fleming Foods, in advance of their actions. A long-time company policy precluded acceptance of any "gift" from any supplier. When defendants' actions were finally revealed, Fleming terminated their employment with the company.

■ As indicated, on appeal counsel argues that the indictment does not charge an offense which comes within the purview of the mail fraud statute, and that the evidence offered and received at trial does not show a violation of the statute. We do not agree with this line of argument.

A deprivation of an employee's loyal services by his participation in a kickback scheme has been held to amount to actual fraud under the mail fraud statute. *United States v. Bryza*, 522 F.2d 414 (7th Cir. 1975), *cert. denied*, 426 U.S. 912, 96 S.Ct. 2237, 48 L.Ed.2d 837 (1976) and *United States v. George*, 477 F.2d 508 (7th Cir.), *cert. denied*, 414 U.S. 827, 94 S.Ct. 49, 38 L.Ed.2d 61 (1973). *Bryza* involved a purchasing agent for International Harvester Company who accepted payments in return for orders placed in violation of company policy and without the company's knowledge. *George* involved a purchasing agent for Zenith Radio Corporation who received "kickbacks" from suppliers of Zenith. In a somewhat related factual setting, the Seventh Circuit in *United States v. Isaacs*, 493 F.2d 1124 (7th Cir.), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3184, 41 L.Ed.2d 1146 (1974), held that the

mail fraud statute was violated when the mails were used in furtherance of a bribery scheme which deprived the citizens of Illinois of the honest and faithful services of its then Governor.

■ In the instant case the indictment charged, *inter alia*, that the defendants used the mails to further a scheme to defraud Fleming of its right to the loyal, honest and disinterested services of its employees, Reece and Tomlinson. Under the rationale of *Bryza, George* and *Isaacs*, such is sufficient to charge an offense under the mail fraud statute. The evidence in support of such allegation is amply sufficient to support the jury's verdict. Contrary to counsel's suggestion that all was "above board," there is evidence that Reece and Tomlinson acted covertly in an effort to conceal their brokerage business from Fleming.

■ Additionally, the indictment also charged that a part of the scheme devised by the defendants involved an effort to defraud Fleming of money obtained by Reece and Tomlinson in the course of their performance of their official duties and at the expense of the company. Again, there is evidence to support the jury's verdict in this regard. Testimony was offered that the brokerage fee paid Reece and Tomlinson had an overall effect on price charged Fleming for the beef trimmings sold to it. Indeed, a representative of National Beef testified that he offered to "discount" the beef trimmings sold by it to Fleming by the amount of the brokerage fee paid Tomlinson, if the latter would forego his fee. Tomlinson declined this suggestion, stating that such would not adequately reflect "his performance."

In sum, the indictment charges a violation of the mail fraud statute, and the evidence supports the jury's verdict that the mail fraud statute was in fact violated by the two defendants.

Prior to trial defense counsel sought a ruling from the trial court that evidence pertaining to the relationship between the defendants and a meat broker named Gur-

rentz was inadmissible evidence. Apparently counsel was apprehensive that the Government in its case in chief would offer evidence concerning the relationship between the defendants and Gurrentz. The evidence presumably would show a series of transactions involving kickbacks to Reece and Tomlinson similar to the transactions between the defendants and National Beef and Missouri Beef. As trial was about to commence, defense counsel renewed their request for a ruling on this matter. The prosecuting attorney then indicated that he did not intend to offer such evidence in his case in chief. In such circumstances the defendants did not persist in their request for a ruling by the court.

In his opening statement counsel for Tomlinson, however, proceeded to outline in detail the relationship between his client and Gurrentz. Though counsel for Tomlinson did not refer to Gurrentz by name, he did refer to him as "broker G." We are advised that as a part of his opening statement, which was made before the Government presented any evidence, counsel used chalk and blackboard to illustrate the relationship between Tomlinson and "broker G.".

It was in this setting that the Government, as a part of its case in chief, determined to offer evidence of the relationship between the defendants and broker Gurrentz as a similar transaction. Objection was made on the ground that the Government was breaking its agreement and that the evidence itself was not admissible. The trial court, after hearing argument, overruled the objections and received the proffered testimony. At the conclusion of such testimony the trial court immediately gave a cautionary instruction to the jury concerning the limited purpose for which such testimony was being received. We find no reversible error in the trial court's handling of this matter.

■ Probably the real issue in connection with this particular matter is whether the evidence outlining the defendants' relationship with broker Gurrentz was admissible. We agree with the trial court that it was.

The defendants' relationship with Gurrentz was quite similar to their relationship with National Beef and Missouri Beef. All were more or less contemporaneous transactions. The trial court balanced all the equities and determined that under all the circumstances such evidence was admissible under Fed.R. Evid. 403. We are not inclined to disturb the trial court's ruling. See *United States v. Beathune*, 527 F.2d 696 (10th Cir. 1975), *cert. denied*, 425 U.S. 996, 96 S.Ct. 2211, 48 L.Ed.2d 821 (1976). *United States v. Burkhart*, 458 F.2d 201 (10th Cir. 1972), relied on by the defendants, is inapposite.

■ Defense counsel also claims that it was error for the trial court to release the Government from its promise not to introduce this evidence. In this regard, the Government asserts that counsel for Tomlinson opened up the entire matter by advising the jury, in detail, in his opening statement of the relationship between the defendants and broker Gurrentz. Counsel painted a verbal picture, buttressed by a blackboard diagram, intending to portray employee loyalty on the part of the defendants in their relationship with broker Gurrentz. The Government contends that in such circumstance it was released from its earlier promise. The trial court, by its ruling, agreed and allowed the evidence to come in. In so ruling we believe that the trial court did not abuse its discretion. Although *United States v. Scanland*, 495 F.2d 1104 (5th Cir. 1974), relied on by defense counsel, is distinguishable, the Fifth Circuit in *Scanland* did recognize that: "subsequent developments, of course, may make it necessary for either or both parties to be released from their Omnibus hearing agreements. We expressly refuse to diminish the sound discretion vested in the district court to grant such releases." 495 F.2d at 1106. In the instant case there were indeed "subsequent developments," and we too are disinclined to "diminish" the sound discretion vested in a trial court in a matter of this type.

The remaining matters raised in this appeal require only limited comment. It is claimed that the instructions permitted the

jury to convict on the mere fact of nondisclosure by the defendants of the secret profits received by them from National Beef and Missouri Beef. That is not our reading of the instructions. Contrary to the suggestion of counsel, the Government was not relying on just constructive fraud, but was relying on actual fraud, and the jury was adequately advised that a specific intent was required.

It is also claimed that the prosecuting attorney made improper comment in closing argument. It was indeed forceful comment, but no more so than closing argument by defense counsel. Our reading of the closing argument discloses nothing which would warrant reversal.

Defendants also complain that an "unauthorized person" participated in the grand jury proceedings which resulted in their indictment, and that such required a dismissal of the indictment. Specifically, the complaint was that one Terrance J. Wear, an attorney in the Department of Agriculture, was appointed Special Assistant to the United States Attorney without the "specific direction" contemplated by 28 U.S.C. § 515, and as such participated in the grand jury proceedings. Wear, incidentally, also participated in the actual trial of this case. The trial court overruled the motion to dismiss based on Wear's participation in the grand jury proceedings, citing *United States v. Katz*, 535 F.2d 593 (10th Cir.), *cert. denied*, 429 U.S. 895, 97 S.Ct. 255, 50 L.Ed.2d 178 (1976). We agree with the trial court.

■ In this Court, though apparently not in the trial court, it is argued that even if Wear were properly appointed, he had a disqualifying "conflict of interest" because he had previously been involved in an investigation into commercial bribery by various meat packing companies while he was an attorney for the Department of Agriculture. Such, according to counsel, renders the indictment subject to a motion to dismiss. We do not agree. The record before us does not demonstrate any such conflict of interest on the part of Wear as would warrant a dismissal of the indictment. The cases cited by counsel are inapplicable.

The denial of the motion for a bill of particulars and the motion for severance present matters lying within the sound discretion of the trial court, and under the circumstances, we find no abuse of that discretion.

As indicated at the outset, the primary issue raised on appeal is whether the defendants' acts come within the prohibitions of the mail fraud statute. We conclude that they do.

Judgments affirmed.