**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jesse L. GANN, Defendant-Appellant.**

**No. 82–1591.**

United States Court of Appeals,
Tenth Circuit.

Sept. 30, 1983.

Jonathan T. Belknap, Fraser, Colo., for defendant-appellant.

Gary L. Richardson, U.S. Atty., Muskogee, Okl. (Donn F. Baker, Asst. U.S. Atty., with him on brief), for plaintiff-appellee.

Before HOLLOWAY, McWILLIAMS, and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Jesse Gann was indicted on three counts of extortion, 18 U.S.C. § 1951 (1976), sixteen counts of mail fraud, 18 U.S.C. §§ 2, 1341 (1976), and two counts of conspiracy to commit mail fraud, 18 U.S.C. § 371 (1976). After a jury trial, he was convicted of one count of mail fraud, Count 19. On appeal Gann argues that the Government failed to prove a use of the mails for the purpose of executing a scheme to defraud within the meaning of 18 U.S.C. § 1341. We disagree and affirm.

## I.

### BACKGROUND

The evidence relevant to the one mail fraud count on which Gann was convicted is briefly as follows. Gann was a county commissioner of Hughes County, Oklahoma. As a county commissioner, Gann purchased supplies and equipment for the county that were used to maintain county roads and bridges.

Bill Klutts was a salesman at various times for Okie Equipment Co., Independent Industries, and Granite Gravel, three companies that sold material and equipment to Hughes County. Klutts testified that he had routinely paid kickbacks to county commissioners who did business with these companies. He described several transactions with Gann on which he had paid Gann kickbacks, including the sale that is the basis of Count 19. Klutts stated that he had paid Gann "[b]ecause he bought merchandise, supplies off of me." Rec., vol. III, at 72. Klutts, who had been a county commissioner himself, testified he had "told Mr. Gann that if he done what the public expected of him to do and demanded of him to do, that he would have to make some money on the side." Id. at 87. Klutts paid the kickbacks to Gann in private without discussing the amount. Gann admitted receiving money from Klutts and other suppliers who sold merchandise to the county.

Count 19 involved Gann's purchase, through Klutts, of a new John Deere 410 backhoe from Independent Industries.[1] Gann admitted receiving "$750.00 to $1000.00" from this transaction. Id. at 376. The county purchased the backhoe under a lease purchase agreement which required a downpayment of $4,000, and monthly payments of $750. Id. at 78. The vendor sold this agreement to the First National Bank and Trust Company of Holdenville (Bank), which in turn gave a cashier's check to Klutts. The county then made payments to the Bank by warrants sent in the mail.

## II.

### SUFFICIENCY OF THE MAILING

Count 19 charges that Gann participated in "a scheme to defraud the citizens of Hughes County and to obtain money by depriving the citizens of that County of their right to have said County's business conducted openly, honestly, and impartially, free from corruption and undue influence."[2] Rec., vol. I, at 6. The indictment

---

1. Richard Irwin, owner of a half interest in Independent Industries, testified that he was aware that Klutts was paying kickbacks in connection with Independent Industries sales. Rec., vol. III, at 124. The other half owner, E.L. Irwin, testified that he provided Klutts with money to pay the kickbacks. Id. at 145.

2. This type of fraudulent scheme comes within the general purview of the mail fraud statute. See, e.g., United States v. Primrose, 718 F.2d 1484 (10th Cir.1983); United States v. Reece, 614 F.2d 1259, 1261 (10th Cir.1980).

further charges that as part of the scheme, Gann entered into the lease purchase agreement with Klutts in exchange for cash kickbacks. *Id.* at 7.

The mail fraud statute requires proof of a mailing made "for the purpose of executing" the fraudulent scheme. 18 U.S.C. § 1341. Count 19 alleges as the requisite mailing that Gann caused a county warrant, or check, to be mailed to the Bank that had bought the lease purchase agreement. This warrant was for $4,000, the downpayment required on the backhoe.

Gann argues that this mailing could not have been for the purpose of executing the fraudulent scheme because any scheme had reached fruition before the warrant was mailed. This argument rests on his contention that the scheme, if one existed, was complete when both Gann and Klutts obtained their money, events which had occurred prior to the time the county mailed the warrant to the Bank.

■ Our disposition of this argument is guided by our analysis of a similar contention in another case involving Oklahoma county commissioners and kickbacks, decided this date. In *United States v. Primrose,* 718 F.2d 1484 (10th Cir.1983), we held that a kickback scheme to defraud county citizens was not complete until the county had paid out funds as a result of the agreement involving the kickback. That holding is equally applicable here. Based on the reasoning and authorities set forth in *Primrose,* we reject Gann's argument that the scheme in this case was complete when he and Klutts were paid. Thus, Gann's reliance on *United States v. Maze,* 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974), and *Kann v. United States,* 323 U.S. 88, 65 S.Ct. 148, 89 L.Ed. 88 (1944), is misplaced. "*Kann* and *Maze* hold merely that under the facts of those cases the fraudulent schemes had ended before the mailings occurred. If the scheme continues, mailings made after receipt of the money can clearly support conviction." *U.S. v. Knight,* 607 F.2d 1172, 1175 (5th Cir.1979).

■ Gann places great significance on the fact that the county in this case mailed the check to the Bank, an innocent third party, rather than to a participant in the scheme. This fact does not alter our analysis. The county financed the purchase of equipment through the use of lease purchase agreements. The customary practice of the vendor was to assign such agreements to banks. Absent the financing arrangement between the vendor and the Bank, the county would have paid the money directly to the vendor, as in *Primrose.* We conclude that the county's payment to the Bank, instead of to the vendor, was an integral part of the entire transaction and in furtherance of the scheme to defraud county citizens. Under the circumstances of this case, it is irrelevant that the warrant was mailed to an innocent third party as a result of a financing arrangement facilitating the transaction.

### III.

### SUFFICIENCY OF THE EVIDENCE

Gann argues that even though he received money from Klutts as part of this transaction, he is not guilty under the mail fraud statute because there is no evidence of a pre-arranged agreement to take the money, or of his participation in devising the kickback scheme. Gann characterizes his activity as the spontaneous acceptance of an unsolicited offer, and he contends that this conduct is not sufficient to show knowing participation in a fraudulent scheme.

■ This argument strains credulity. The mail fraud statute applies to "whoever ... devise[s] or intend[s] to devise any scheme or artifice to defraud." 18 U.S.C. § 1341. Gann was also charged in Count 19 with violating 18 U.S.C. § 2, which applies to "[w]hoever ... aids, abets, counsels, commands, induces or procures" commission of an offense against the United States. To sustain a mail fraud conviction, the Government need not prove that the defendant was one of those who originally devised the scheme. *United States v. Perkal,* 530 F.2d 604, 606 (4th Cir.), *cert. denied,* 429 U.S. 821, 97 S.Ct. 70, 50 L.Ed.2d 82 (1976); *see also United States v. Price,* 623 F.2d 587, 591 (9th Cir.), *cert. denied,* 449

U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980). A defendant may be convicted of mail fraud if he knowingly and willfully participates in a fraudulent scheme created and set in motion by others. *Id.*

In determining whether the evidence is sufficient to prove that Gann's participation in the kickback scheme was knowing and willful, we must view the record in the light most favorable to the jury's verdict. *United States v. Petersen,* 611 F.2d 1313, 1317 (10th Cir.1979), *cert. denied,* 447 U.S. 905, 100 S.Ct. 2985, 64 L.Ed.2d 854 (1980). In this case, the Government presented evidence that Gann turned down an opportunity to purchase a backhoe at a price $2,500 less than the price Gann paid Klutts. Another supplier, James Tooley, had offered to sell Gann a John Deere 410 backhoe that had been used for about a month. The net cost to the county for this backhoe would have been $22,500. The net cost of the new backhoe purchased through Klutts was $25,000.[3] Tooley testified that, when he had discussed the sale with Gann, Gann had asked him if the price included Gann's "commission." Rec., vol. III, at 171–72. Tooley testified he had informed Gann that the company would not pay him more than $1,000. *Id.* Tooley further testified that Gann subsequently had told him the county had purchased a backhoe from Klutts at a price "quite a bit cheaper" than Tooley's price. *Id.* at 176. The jury could reasonably infer from this evidence, coupled with Klutts' testimony, that Gann was fully aware of the nature of the fraudulent scheme and participated actively in it.

Accordingly, we conclude that the evidence is sufficient to allow the jury to find beyond a reasonable doubt that Gann's acceptance of the kickback from Klutts was knowing and willful, and part of a scheme to deprive the citizens of Hughes County of their right to have the county's business conducted free from corruption and undue influence.

The judgment is affirmed.

---

3. As part of the lease purchase agreement, Klutts purchased a used piece of equipment from the county for $9,500. Thus the net cost to the county of the entire transaction was the price of the new backhoe, $34,000, minus the price of the used equipment, $9,500, or $25,000.

In the proposed Tooley transaction, the price of the backhoe was $28,000, minus the price offered by Tooley for the used equipment, $5,500, resulting in a net cost to the county of $22,500.