**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Herb NEAL, Defendant-Appellant.**

**No. 82–2309.**

United States Court of Appeals,
Tenth Circuit.

Sept. 30, 1983.

Rehearing Denied Feb. 17, 1984.

---

Gene Stipe, Oklahoma City, Okl. (Robert K. McCune, Oklahoma City, Okl., with him on brief) of Stipe, Gossett, Stipe, Harper, Estes, McCune & Parks, Oklahoma City, Okl., for defendant-appellant.

Susie Pritchett, Asst. U.S. Atty., Oklahoma City, Okl. (William S. Price, U.S. Atty., Oklahoma City, Okl., also on brief), for plaintiff-appellee.

Before HOLLOWAY, McWILLIAMS and SEYMOUR, Circuit Judges.

HOLLOWAY, Circuit Judge.

This is a direct appeal by the defendant-appellant Herb Neal from his convictions on thirty-three counts of a thirty-four count indictment charging him with mail fraud and aiding and abetting mail fraud, in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 2.[1] Neal was sentenced to terms of five years' imprisonment on each of his convictions, Count II to run consecutively to Count I and Counts III through XXII and XXIV through XXXIV to run concurrently to Count I. He was also fined $1,000.00 for each of the first two counts.

Viewing all the evidence, direct and circumstantial, together with all reasonable

---

1. Neal was found not guilty on count twenty-three. (VII R. 1007–08).

inferences therefrom, in the light most favorable to the Government as we must on this appeal from a guilty verdict, *United States v. Twilligear,* 460 F.2d 79, 81–82 (10th Cir.), the evidence tended to show the following:

## I

### Background

This case is one of many that arose from an extensive investigation by the F.B.I., the I.R.S., and the United States Attorneys for Oklahoma into payment to numerous county commissioners of kickbacks, by suppliers of equipment or materials purchased by the counties for road and bridge building and maintenance. During the period covered by the indictment Neal worked as a salesman for three companies in Ponca City, Oklahoma, that supplied such materials. All thirty-four counts were premised on allegations that Neal and others devised a scheme to defraud various counties and the citizens thereof "by depriving them of their right to have county business conducted openly, honestly, impartially, and free from corruption and undue influence by their elected County Commissioner and to use the . . . mails in furtherance of the scheme." (I R. 93). Cf. *United States v. Mandel,* 591 F.2d 1347, 1362 (4th Cir.), *cert. denied,* 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (bribery of public official satisfies fraud element of the mail fraud statute); *United States v. Gann,* 718 F.2d 1502, 1503 n. 2 (10th Cir.).

Seven different county commissioners testified at trial that they had received kickbacks from Neal.[2] (*E.g.,* V R. 248–50; VI R. 322–24, 409, 483, 547–48, and 573). Some stated that they had received kickbacks on every purchase from Neal while others testified that the kickbacks were only occasional. Moreover, some commissioners testified that not all suppliers gave kickbacks but they always tried to do business with suppliers like Neal who did give kickbacks. (*E.g.,* V R. 325). The payments generally approximated 10% of the purchase price. Some commissioners further testified that they had accepted "50–50 splits" from Neal, also known as "split" or "blue-sky" deals, in which the commissioner would order materials or supplies from Neal, the county clerk would issue a warrant, *i.e.,* check, to Neal as payment for the goods, the goods would not be delivered, and the commissioner and Neal would split the amount of the warrant between themselves.

Oftentimes the kickback was agreed to before a purchase was consummated, but generally the agreement was tacit that a kickback would be forthcoming. The kickback payment generally occurred after the county clerk had mailed the warrant to Neal and the material or supplies were delivered. Furthermore, the kickbacks were paid in cash and in a surreptitious manner with no one present but Neal and the commissioner, frequently while the parties were alone in Neal's car. In addition, six county clerks testified that warrants in payment for materials or supplies were always mailed unless the supplier was local and personally picked up the warrant. (V R. 43, 50, 110, and 183). With respect to the counts on which these convictions resulted, mailing of the warrants was proved.

In his defense, Neal offered the testimony of several county commissioners to the effect that he never offered or paid them kickbacks, and that of several character witnesses who testified that Neal had a good reputation in his community. Neal also took the stand and testified that he had never paid a kickback, that the Government's witnesses were lying, and that some of the Government's witnesses had told him that they were simply going to tell the F.B.I. whatever they wanted to hear.

For reversal, Neal asserts that the trial court erred (1) in denying his motion for judgment of acquittal or in the alternative for a new trial because the evidence was

---

**2.** Each of these witnesses testified that they had entered into an agreement with the United States Attorney to fully cooperate with the investigation in exchange for being allowed to plead guilty to one count of conspiracy to commit mail fraud and to tax evasion, thus relieving the commissioners of the threat of numerous prosecutions based on their individual transactions. (*See e.g.,* III R. Pl. exh. 47).

insufficient to prove that the mails were used in furtherance of a scheme or artifice to defraud; (2) in overruling his motion in limine regarding evidence of the relationship between a Government witness and two of Neal's in-laws; (3) in not granting a pretrial request for a change of venue based on prejudicial pretrial publicity, and; (4) in denying his motion in limine concerning the introduction of evidence outside the times and places set forth in the indictment.

## II

At the close of the Government's case Neal moved for a judgment of acquittal, claiming that the evidence had failed to show that the mailings were an integral part of the scheme. (VII R. 702–09). The motion was overruled, and then renewed at the close of all the evidence, and again overruled. (I R. 163–69; VII R. 710–11 and 958–59). Again, after the verdict Neal moved for a judgment of acquittal or, in the alternative, for a new trial, asserting the same argument. (I R. 187–91); see F.R.Crim.P. 29(c). On appeal Neal asserts that the trial court erred in overruling these motions in that the evidence failed to show that the use of the mails was an integral part of the scheme. (Brief of Appellant at 5 and 9).

Neal devotes the majority of his argument on this issue to Counts XXX through XXXIV, Counts that charged kickbacks from lease-purchase transactions rather than direct purchases.[3] Relying on *United States v. Maze,* 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974), *Parr v. United States,* 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960), *Kann v. United States,* 323 U.S. 88, 65 S.Ct. 148, 89 L.Ed. 88 (1944), and *United States v. Lynn,* 461 F.2d 759 (10th Cir.), *inter alia,* Neal contends that the mailings by the counties to the banks of monthly lease-purchase payments were "totally unrelated and not an integral part of the scheme," reasoning that the kickbacks had been paid prior to the use of the mails and thus the mailings played no role in the

completion of the scheme. (Brief of Appellant at 9–10). Furthermore, Neal contends that the Government's proof as to the use of the mails was inadequate in the counts alleging kickbacks on direct purchases as well. (*Id.*).

We see no need to delve into these arguments in detail as we have considered and rejected them in related cases filed today. *See United States v. Primrose,* 718 F.2d 1484 (10th Cir.); *United States v. Gann,* 718 F.2d 1502 (10th Cir.); *and see United States v. Whitt,* 718 F.2d 1494 (10th Cir.); *United States v. Boston,* 718 F.2d 1511 (10th Cir.).

In *Primrose* we held that the mailing of the warrants from the county clerk to the vendor was an essential part of the scheme, regardless of whether the kickback was paid before or after the mailing. *Primrose, supra,* at 1488–1489. There, the defendant was a county commissioner and the argument that the scheme was complete upon receipt of the kickback was rejected. Here, Neal being the salesman for various vendors, the mailing of warrants to the vendors is even more closely within the scheme. Likewise in *Gann,* a case involving a lease-purchase agreement, we found the mailing of a warrant from the county clerk to a bank to be an integral part of the entire transaction and in furtherance of the scheme to defraud. *Gann, supra,* at 1504.

The circumstances in the instant case are similar to those in *Primrose, Gann, Whitt,* and *Boston* and the mailings in all these cases were sufficient to bring the charges within the purview of § 1341. Viewing the evidence in the light most favorable to the Government as we must in reviewing the district court's refusal to grant a motion for judgment of acquittal, *United States v. Tager,* 481 F.2d 97, 100 (10th Cir.), *cert. denied,* 415 U.S. 914, 94 S.Ct. 1410, 39 L.Ed.2d 469, we conclude that

---

**3.** In the case of a lease-purchase agreement the county would lease equipment from the supplier with an option to purchase the equipment at the end of the lease. The supplier would assign

its rights under the lease to a bank, Neal would pay a kickback to a county commissioner, and the county would issue monthly payments (warrants) to the bank.

the trial court did not err and that Neal's argument that the evidence was insufficient to support the mail fraud convictions is without merit.

### III

Neal next contends that the court erred in refusing to grant his pretrial motion in limine by which he asked the trial court to direct the Government not to refer to evidence concerning relationships between Government witness Dorothy Griffin and Neal's father-in-law, Ralph Stewart, or brother-in-law, Monty Stewart.[4] (I R. 144). The motion was overruled. (I R. 146).

Griffin testified that she was the owner of a lumber company that frequently did business with county commissioners and other suppliers to county commissioners. (III R. 657). Griffin stated that her company provided a "service" to other vendors, among them Stewart Supply Company. The "service" provided was as follows: a supplier would give her a check for the purchase of materials or supplies which neither party ever intended to be delivered, Griffin would cash the check and return ninety to ninety-five percent of the cash to the supplier along with a bogus invoice for the undelivered goods, and Griffin would keep the balance of the cash as her commission. (VI R. 658–61). The supplier then used the invoices as a record, which was false, of the supplier's expenditures, and as a means of obtaining cash to pay kickbacks.

Griffin stated that she provided this "service" for Stewart Supply Company while Neal worked there and identified some eighteen bogus invoices made for Stewart Supply totalling approximately $80,000.00 worth of goods, as well as numerous checks from Stewart Supply used to pay for the invoices. (III R. Pl. exhs. 57, 57A through Q, 58, and 58A through X). Among the checks, Griffin identified one (III R. Pl. exh. 58P), signed by Neal, used as payment for three phony invoices. (III R. Pl. exhs. 57M, N, and O; VI R. 671–74). Indeed, some of the invoices were made out for materials, such as steel pipe, that were not even sold by Griffin's lumber company. She further testified to meeting Ralph Stewart and Neal in an Oklahoma City coffee shop where Stewart indicated that he wanted some bogus invoices so that "he would have some money to operate on with his Commissioners." (VI R. 662). This was the only time Griffin ever met Neal. (VI R. 661). She identified him at trial. (*Id.*).

On appeal, Neal contends that this testimony was both irrelevant and prejudicial in violation of Rules 401 and 403 of the Federal Rules of Evidence. Specifically he claims that the prejudice "arose from the prosecutor's ability to inject Ralph Stewart into the trial of this action in order to attempt to prove that Herb Neal paid kickbacks because it was company policy." (Brief of Appellant at 11–12). We cannot agree.

In order for evidence to be relevant it need only "[tend] to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401 F.R.E. Here, the Government had to establish use of the mails in furtherance of a scheme to defraud in order to meet its burden in proving a violation of § 1341. A portion of the scheme alleged was that Neal would pay cash kickbacks to various county commissioners. The Griffin testimony indicated that Neal was present when Griffin and Ralph Stewart, Neal's father-in-law, discussed the purchase of bogus invoices used as a means of obtaining funds for the payment of kickbacks. Furthermore, the documentary evidence introduced during Griffin's testimony showed Neal's signature on a check from Stewart Supply Company to Griffin's lumber company for more than $4,000.00 worth of materials and supplies that were never delivered.

The trial court is granted broad discretion in ruling on the relevance of evidence, *see Hackbart v. Cincinnati Bengals, Inc.,* 601

---

**4.** Ralph Stewart was the owner of Stewart Supply Company, one of the three supply companies which employed Neal as a salesman during the period covered by the indictment. Monty Stewart was Ralph Stewart's son and was also employed by Stewart Supply Company.

F.2d 516, 525–26 (10th Cir.), *cert. denied,* 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 188 and this court will not disturb that discretion absent a clear showing of abuse. *Texas Eastern Transmission v. Marine Office-Appleton & Cox,* 579 F.2d 561, 566–67 (10th Cir.). We feel the questioned testimony and documentary evidence was probative of a scheme to defraud and find no abuse of discretion in the trial court's ruling in that respect.

We are mindful, however, that relevant evidence should be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.[5] As with Rule 401, a trial court has broad discretion under the Rule to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *See* Rule 403 F.R.E.; *United States v. Franklin,* 704 F.2d 1183, 1187 (10th Cir.); *United States v. Nolan,* 551 F.2d 266, 271 (10th Cir.), *cert. denied,* 434 U.S. 904, 98 S.Ct. 302, 54 L.Ed.2d 191. Our review of the record reveals that the trial transcript includes more than one thousand pages and Griffin's testimony covered only 46 of those pages. Griffin testified that the only time she met Neal was at her meeting with Ralph Stewart and that Neal did not play an active role in that meeting. Under these circumstances we cannot say the trial judge abused his discretion in admitting this testimony.

### IV

Neal argues further that the trial court erred in denying his pretrial motion to transfer the case to another district due to excessive pretrial publicity, citing *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), *inter alia.*

In *Sheppard,* the defendant, who was suspected of murdering his wife, was exposed to extensive pretrial publicity including a three day televised inquest before an audience of hundreds of persons, publication of the names and addresses of the potential jurors in the major local newspapers more than three weeks prior to trial, and heavy newspaper, television, and radio coverage calling for the defendant's arrest, detailing an extra-marital love affair, and revealing that Sheppard had repeatedly refused to take a lie detector test, among other things.

■ Except as otherwise permitted by statute or the rules, a criminal prosecution is to be conducted "in a district in which the offense was committed." Rule 18, F.R. Crim.P. In instances of pretrial publicity, however, Rule 21(a), F.R.Crim.P., provides as follows:

> For Prejudice in the District. The court upon motion of the defendant shall transfer the proceeding as to him to another district whether or not such district is specified in the defendant's motion if the court is satisfied that there exists in the district where the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial at any place fixed by law for holding court in that district.

Under the rule, the grant or denial of a motion for a change of venue in a criminal case is within the trial court's discretion and, absent an abuse of that discretion, the ruling will not be disturbed on appeal. *See United States v. Hunter,* 672 F.2d 815, 816 (10th Cir.); *United States v. Jobe,* 487 F.2d 268, 269–70 (10th Cir.), *cert. denied,* 416 U.S. 955, 94 S.Ct. 1968, 40 L.Ed.2d 305.

Unlike the *Sheppard* case, here Neal cites no specific instance of prejudicial publicity. In addition, defendant candidly admits that "[t]here has been little pretrial publicity concerning the particular appellant, Herb Neal . . ." (Brief of Appellant at 12). Defendant contends, nevertheless, that here the publicity "was even more insidious because the publicity was administered in such a broad and bold stroke that all defendants in these cases were tainted." *Id.* at 12.

However, " . . . when publicity is about the event, rather than directed at individual

---

5. Rule 403 F.R.E. provides:
   Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

defendants, this may lessen any prejudicial impact." *United States v. Hueftle,* 687 F.2d 1305, 1310 (10th Cir.). Here defendant Neal submitted no evidence to make a record about the pretrial publicity which we can review. Moreover, "the proper occasion for determining juror partiality is upon voir dire examination." *United States v. Lamb,* 575 F.2d 1310, 1315 (10th Cir.), *cert. denied,* 439 U.S. 854, 99 S.Ct. 165, 58 L.Ed.2d 160. Neal has not designated the *voir dire* transcript as part of the record and we cannot speculate as to what the record of that examination might reveal as to any prejudicial effect on the venire.

■ On the record before us we see nothing to indicate that the trial court abused its discretion in denying the venue change, especially in a case such as this where, by Neal's admission, the publicity was not generally directed at him. *See United States v. Hueftle, supra,* 687 F.2d at 1310.

## V

■ Neal's final argument is that the trial court erred in denying his motion in limine by which he attempted to prevent the introduction of any evidence as to a scheme to defraud or as to the payment of kickbacks which occurred outside the times and places charged in the indictment. In his brief in support of the motion he argued that such evidence "would be prejudicial and cumulative" and unnecessary to prove the existence of a scheme in that evidence as to the thirty-four counts charged should suffice. (I R. 143).

Here again our holding is guided by a companion opinion which considered and rejected a similar argument. In *United States v. Primrose,* 718 F.2d 1484 (10th Cir.), where defendant-appellant Primrose was charged with thirty-eight counts of mail fraud, among other things, and substantial evidence of a scheme outside the time frame charged in the indictment was admitted, we found no abuse of discretion on the part of the trial court. As in the *Primrose* case, here the court gave a cautionary instruction each time such evidence was admitted (*see e.g.* VI R. 488) and, in his charge to the jury, the judge instructed that evidence of crimes concerning of-

fenses not charged in the indictment might be considered for the limited purpose of proof of "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident . . . ." (VII R. 986; *see also* Rule 404(b) F.R.E.). At 1491–1492. On the reasoning in *Primrose,* we conclude that Neal's argument is without merit.

## VI

The defendant appellant has demonstrated no reversible error in the record of his trial and accordingly the judgment is

AFFIRMED.