**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Clyde Ray HASKINS, Defendant-Appellant.**

No. 83–1990.

United States Court of Appeals, Tenth Circuit.

June 12, 1984.

Gary L. Richardson, U.S. Atty., Muskogee, Okl. (Donn F. Baker, Asst. U.S. Atty., Muskogee, Okl., with him on brief), for plaintiff-appellee.

Bruce Green of Green & Green, Muskogee, Okl., for defendant-appellant.

Before SETH, Chief Judge, BARRETT, Circuit Judge, and SAFFELS *, District Judge.

BARRETT, Circuit Judge.

Clyde Ray Haskins (Haskins), a former county commissioner of Pontotoc County, Oklahoma, appeals from his sentence following jury conviction on twenty-five counts of an indictment charging him with mail fraud and aiding and abetting mail fraud, in violation of 18 U.S.C. §§ 1341 and 2, and three counts of extortion, in violation of 18 U.S.C. § 1951. He was sentenced to a period of five months on each of the twenty-five mail fraud counts, and to a period of five months each on counts 26 through 28, to run consecutively, or a total sentence of eleven years and eight months.

This is one of some two hundred prosecutions resulting from an extensive investigation conducted by the Federal Bureau of Investigation, the Internal Revenue Service, and the United States Attorneys for Oklahoma involving "kickback" payments to Oklahoma county commissioners by vendors/suppliers of material and equipment purchased by the counties for county road and bridge purposes. It is also one of several appeals of like prosecutions decided by this Court.[1]

### FACTS

■ The facts will be recited in summary fashion, keeping in mind the rule that on appeal following conviction we must view all of the evidence, direct and circumstantial, together with all reasonable inferences to be drawn therefrom, in the light most favorable to the government. *United States v. Strand,* 617 F.2d 571 (10th Cir. 1980) *cert. denied,* 449 U.S. 841, 101 S.Ct. 120, 66 L.Ed.2d 48 (1980); *United States v. Gibbons,* 607 F.2d 1320 (10th Cir.1979);

*United States v. Twilligear,* 460 F.2d 79 (10th Cir.1972).

Haskins, age 64 at time of trial, was elected county commissioner of Pontotoc County, Oklahoma, and commenced service in January of 1979. Prior thereto, he had served in the sheriff's department for about three years. He was reelected county commissioner in 1982. He and his wife, Geraldine, have lived near Ada, Oklahoma, for about twenty years, where they reared three sons. Mrs. Haskins, a medical secretary, testified that since her husband has been county commissioner, they have not acquired any material items of note. They reside in the same home in which they have lived for many years, are purchasing a car on monthly payments, and have accumulated a small savings account. The trial court, over objection, permitted Geraldine Haskins to testify that she handled all the family finances and that a couple of years prior to trial they began installing siding on their home, but completed only about one-third of it because of insufficient funds. She stated further that with the exception of short trips to visit a son in Arkansas, she and her husband had no vacations since 1977.

Clyde Haskins, a veteran of World War II with service in the South Pacific and the Philippines, testified in his own behalf. He denied having received any money from suppliers/vendors Donald H. Skipworth, Leroy Strickland, or Carl Allen, each of whom testified that on various occasions they had in fact paid Haskins ten percent "kickbacks" or fifty-fifty "splits" for his part in fraudulent transactions with the county. These transactions involved sales of materials and equipment to Haskins' second district of Pontotoc County. Haskins allegedly received the "kickbacks" for assuring that the county purchased equip-

---

* Honorable Dale E. Saffels, United States District Court for the District of Kansas, sitting by designation.

1. *See United States v. James,* 728 F.2d 465 (10th Cir.1984); *United States v. Lightle,* 728 F.2d 468 (10th Cir.1984); *United States v. Primrose,* 718 F.2d 1484 (10th Cir.1983); *United States v.* *Whitt,* 718 F.2d 1494 (10th Cir.1983); *United States v. Gann,* 718 F.2d 1502 (10th Cir.1983); *United States v. Neal,* 718 F.2d 1505 (10th Cir. 1983); *United States v. Boston,* 718 F.2d 1511 (10th Cir.1983); *United States v. Thurber,* 709 F.2d 632 (10th Cir.1983); *United States v. Perry,* 709 F.2d 1348 (10th Cir.1983).

ment from a particular vendor. He allegedly received a "split" from sales which never transpired—the vendor was paid but the county did not receive the equipment.

Skipworth, Strickland, and Allen, had each been indicted previously and convicted on identical charges arising out of the same scheme to defraud; each testified under an agreement with the government, however, that in consideration for their cooperation (testimony), the United States Attorney would recommend their sentences be reduced. Defense counsel, in closing argument, referred to each of the three as liars who have committed perjury and who appeared against Haskins as convicted felons seeking reduced sentences. Defense counsel stated, "their [the government's] only evidence of wrongdoing is the word of three fellows [Skipworth, Strickland, and Allen] with felony convictions, admitted liars, and proved perjurers." (R., Vol. IV at 526.) In its case in chief, the defense presented some five vendors who did business with Haskins. Each vendor testified that Haskins did not solicit or discuss kickbacks with them and that they did not make any payments to him. In addition, the defense presented character witnesses who vouched for Haskins' good reputation for truth and veracity.

On appeal, Haskins contends that reversible error occurred and his conviction should be set aside because of the following: (1) the trial court erred in allowing into evidence irrelevant facts which were highly prejudicial to Haskins; (2) there is no proof that mailings of county warrants to the vendors were for the purpose of executing a scheme to defraud as required by the mail fraud statute; (3) there was insufficient evidence to show that Haskins affected or attempted to affect, obstruct, or delay interstate commerce by extortionate means; (4) the improper remarks of the United States Attorney during closing arguments were so prejudicial as to deny

Haskins a fair trial; and (5) the failure of the United States Attorney's Office to disclose exculpatory materials pursuant to the court's order denied Haskins a fair trial and denied him the right to confront witnesses.

## I.

■ Haskins contends that testimony of two government witnesses, Donald H. Skipworth and Don Smith, denied him a fair trial. Skipworth and Smith testified that Haskins, before becoming a county commissioner and while working for Smith, a vendor, had paid "kickbacks" to other county commissioners, (those alleged transactions occurred between 1971 and 1975, well outside the time periods contained in the indictment lodged against Haskins). Haskins asserts that because this testimony concerned transactions *prior* to the dates charged in the indictment, it was irrelevant and inadmissible under Rule 404(b) of the Federal Rules of Evidence.[2]

After Smith testified about the transactions, a lengthy discussion between the court and counsel at the bench resulted in the court's order dismissing Smith as a witness and admonishing the jury not to consider his testimony. Even so, Haskins argues that the prejudicial impact of this testimony could not have been lessened by the court's cautionary instruction and striking of the evidence, relying on our decisions in *United States v. Westbo*, 576 F.2d 285 (10th Cir.1978), *United States v. Nolan*, 551 F.2d 266 (10th Cir.1977), *cert. denied*, 434 U.S. 904, 98 S.Ct. 302, 54 L.Ed.2d 191 (1977), and *United States v. Burkhart*, 458 F.2d 201 (10th Cir.1972). In those decisions, we held that the prejudicial impact of evidence of other prior convictions or bad acts outweighed their probative value.

We observe first that during the bench conference the government stated that the books and records supporting Smith's testi-

2. Rule 404(b) of the Federal Rules of Evidence provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, interest, preparation, plan, knowledge, identity, or absence of mistake or accident.

mony (the best evidence) were available in Oklahoma City and that the government could and would promptly obtain and offer them. At this point, defense counsel proposed that if the government counsel would agree to withdraw Smith as a witness, and if the court instructed the jury not to consider Smith's testimony, the defense would not move for a mistrial. (R., Vol. IV at 228–33.) Thus, the court's cautionary instruction was premised upon this agreement. However, the court had already admitted the testimony pursuant to Rule 404(b). (*Id.* 213–14.)

· The same contention was rejected in *United States v. Primrose*, 718 F.2d 1484 (10th Cir.1983). There, too, evidence of transactions not charged in the indictment against former county commissioner Primrose was objected to on the ground that it was "cumulative at best, and prejudicial at worst." The evidence admitted involved some forty-five "kickbacks" outside the five-year limitations period. We upheld the trial court's discretion in admitting this evidence under Fed.R.Evid. 403 and 404(b), for the purpose of proof of Primrose's "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Further, in *Primrose*, we relied upon *United States v. Scott*, 668 F.2d 384, 387 (8th Cir.1981) (Arkansas road commissioner taking a kickback), where the court upheld the admissibility of prior bad acts:

> The fact that a number of the overt acts performed in furtherance of the conspiracy were committed beyond the statute of limitations does not preclude the admission in evidence of such acts to show the nature of the scheme and [the commissioner's] intent where the later use of the mails occurred.

*See also, United States v. Reece*, 614 F.2d 1259 (10th Cir.1980); *United States v. Walton*, 552 F.2d 1354 (10th Cir.1977); *United States v. Adcock*, 558 F.2d 397 (8th Cir. 1977), *cert. denied*, 434 U.S. 921, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977).

The same analysis employed in *Primrose* applies here. The trial court did not abuse its discretion in admitting the testimony of Haskins' payment of "kickbacks" to other county commissioners during the period he worked for vendor Smith.

## II.

■ Haskins argues that there is no proof that mailings of the county warrants to the vendors were for the purpose of executing a scheme to defraud as required by the mail fraud statute. This contention has been resolved against contentions identical to Haskins' in prior county commissioner cases appealed to this court. *See United States v. James*, 728 F.2d 465 (10th Cir.1984); *United States v. Primrose, supra* at pp. 1489–91; *United States v. Gann*, 718 F.2d 1502, 1504 (10th Cir.1983).

## III.

■ Haskins contends that there was insufficient evidence to show that he affected, or attempted to affect, obstruct, or delay interstate commerce by extortionate means. We disagree. The testimony of vendors Shipworth, Strickland, and Allen, supported by the testimony of Allen Davis, established that certain culvert pipe the vendors purchased from Midwest Steel of Oklahoma City (R., Vol. IV, p. 285) was acquired by Midwest Steel from outside of the State of Oklahoma because no steel is manufactured in Oklahoma. (*Id.* at 324.)

· In *United States v. Boston*, 718 F.2d 1511, 1516 (10th Cir.1983), we observed, *inter alia*:

> The language of the Hobbs Act specifically proscribes interference "in any way or degree ... by robbery or extortion." 18 U.S.C. § 1951(a) (1976) (emphasis added). As the Supreme Court observed in *Stirone* [*v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960)] "[the Hobbs] Act speaks in broad language, manifesting a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion...." 361 U.S. at [215, 80 S.Ct. at 272]. Although this is apparently the first time the issue has been before this court, several other circuits have held

that the clear language of the Act makes any *de minimus* effect on commerce sufficient to sustain federal jurisdiction. We agree with these interpretations of the Hobbs Act.

And in *United States v. Whitt,* 718 F.2d 1494, 1500–01 (10th Cir.1983), we held, as in *Boston,* that evidence that the county regularly purchased goods that had moved in interstate commerce was sufficient to establish the interstate nexus.

### IV.

Haskins contends that the United States Attorney's improper remarks during closing argument were so prejudicial as to deny him a fair trial. We disagree. Similar arguments in other county commissioner cases were dealt with, although in different contexts, and held not to constitute prejudicial error. *See United States v. Primrose, supra* at 1493–94; *United States v. James, supra* at 467–68.

■ In summary, the prejudicial remarks charged to the United States Attorney were as follows: "He [counsel for Haskins] talks about this not being a normal county commissioner case. I have been involved in more of these cases than anybody in the State of Oklahoma, and if it's not normal, I don't know what would be normal." (R., Vol. IV, p. 534). The above comment was in response to defense counsel's argument that "I say to you that this is not a normal county commissioner case with tape recordings and bugs and photographs...." (*Id.* at 528). The court overruled the government's objection to the above remark. When counsel for Haskins objected to the remarks of the United States Attorney, he moved for a mistrial. During a conference at the bench, Haskins withdrew the motion for mistrial. The court then admonished the United States Attorney for commenting on what his "experience" was in similar cases (Id. at 535–36). Haskins requested that the court admonish the United States Attorney and admonish the jury to ignore these remarks. In obvious oversight following the bench conference, the court did not rule on the admonishment request and did not admonish the jury to ignore the remarks. By the same token, defense counsel did not make further requests of the trial court or remind the trial court of this oversight.

Haskins argues vigorously that the prosecutor's closing remarks (1) put his personal experiences and personal interpretations (of various county commissioner cases he had been involved in) before the jury and that these comments had to "effect the jury in such a manner as to put into their minds that the case was similar to the other county commissioner cases wherein guilty verdicts were returned," and (2) were outside the record and were statements from the prosecutor's personal knowledge (Brief of Appellant, p. 30). Haskins asserts, therefore, that the prosecutor effectively put his "personal integrity" before the jury.

The prosecutor's remarks were in direct response to defense counsel's (Mr. Green) closing argument:

> Mr. Green: I say to you that this is not a normal county commissioner case with tape recordings and bugs and photographs—
>
> Mr. Richardson: Your Honor, I object to that statement, "not a normal county commissioner case."
>
> The Court: Proper argument.
>
> Mr. Green: Well, this is not a county commissioner case with tape recordings, bugs, what have you, witnesses. This is a case with three people, Skipworth, Strickland and Allen, admitted felons, proved liars, with no other evidence at all, versus what this man told you from the witness stand with his character, his war record of four bronze stars and one silver star and four years in the South Pacific. And that's it. That's it. How do you defend one of these? How do you? If you were elected county commissioner—
>
> Mr. Richardson: Your Honor, I'm going to object to counsel placing these

witnesses in that position, that's improper.

R., Vol. IV, p. 528.

The prosecutor's remarks, in our view, were in direct response to defense counsel's remarks. It was defense counsel who "vouched" for the "normal" county commissioner case, not the prosecutor. It was defense counsel who brought into the case matters not in evidence, i.e., tape recordings, bugs, and photographs. It was defense counsel who, at least impliedly, informed the jury that this case was not "normal" because here the government relied on the testimony of vendors Skipworth, Strickland and Allen (without the benefit of tape recordings, bugs and photographs) and that these three witnesses were proven "liars" because of their prior guilty pleas to mail fraud charges.

Under all of the circumstances, we hold that the prosecutor's remarks did not constitute error. The prosecutor's remarks, in our judgment, could not have substantially swayed the jury in assessing the verdict, so as to "affect the substantial rights of the accused." *Berger v. United States*, 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935). *See also Kotteakos v. United States*, 328 U.S. 750, 775, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946). The jury had a clear-cut choice between conflicting accounts regarding the "kickback" and "split" transactions which were the heart and hub of the case. The trial court fully and adequately instructed the jury. No challenges are raised in this regard. Among other things, the jury was instructed that it was the sole judge of credibility, that statements and arguments of counsel were not evidence, and that the defendant was not to be found guilty unless his guilt was established beyond a reasonable doubt. In the entire context of the case, the prosecutor's remarks could not have constituted error. These remarks, as in *United States v. Primrose, supra,* did not amount to the prosecutor's personalized vouching for the integrity of the three vendors as Government witnesses. *See also United States v. Ludwig,* 508 F.2d 140, 143 (10th Cir.1974).

The failure of the prosecutor to have responded could very likely have led the jurors to conclude that the government had contrived a special, unfair case against Haskins, removed from the mold of the "normal" case which allegedly involved proof by tape recordings, bugs, and photographs.

A prosecutor is not relegated to the position where he is "confined to such detached exposition as would be appropriate in a lecture." *United States v. Bishop,* 534 F.2d 214, 220 (10th Cir.1976) (quoting *United States v. Isaacs,* 493 F.2d 1124, 1164 (7th Cir.1974), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974)). The prosecutor's remarks were fairly anchored to the facts. They did not divert the jury from its sworn duty to decide the issue of innocence or guilt based on the evidence admitted and the court's instructions. The prosecutor's remarks did not deprive Haskins of a fair trial. *See United States v. Segal,* 649 F.2d 599 (10th Cir.1981); *United States v. Brewer,* 630 F.2d 795 (10th Cir. 1980); *United States v. Bishop, supra; Sanchez v. Heggie,* 531 F.2d 964 (10th Cir. 1976), *cert. denied,* 429 U.S. 849, 97 S.Ct. 135, 50 L.Ed.2d 122 (1976). The error, if any, was harmless in light of the government's proof. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), *reh'g denied,* 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967).

### V.

■ Finally, Haskins argues that the failure of the United States Attorney's Office to disclose exculpatory materials pursuant to the trial court's order deprived him of a fair trial and denied him his Sixth Amendment right to confrontation of witnesses.

On April 4, 1983, counsel for Haskins filed his motion for discovery, which included all evidence and information helpful in the defense of his case—all information concerning prior records, contradictory statements, and agreements between the government and its witnesses. The trial court granted the motion.

Government witness Skipworth testified that he was incarcerated at the Big Springs (Federal) Prison Camp in Big Springs, Texas, at the time of trial, having been tried and convicted in Oklahoma City of mail fraud and income tax evasion arising out of the county commissioner kickback scheme. (R., Vol. IV, pp. 90, 91). After Skipworth had given substantial testimony of "kickback" and "split" transactions he had engaged in with Haskins, the prosecution asked him about his agreement to cooperate with the government. Skipworth testified that following his conviction he voluntarily agreed to cooperate with the government and tell the truth. (*Id.* at 123–28.) On cross-examination, Skipworth testified that after he was indicted, tried, convicted, and sentenced to a term of twenty years, he voluntarily decided to cooperate with the government and, as a result, his sentence was reduced. (*Id.* at 133–34.) Defense counsel asked Skipworth if he could recall the names of county commissioners he dealt with when he testified before the federal grand jury in July of 1981. Skipworth responded that he was having trouble remembering some things then, but not now. (*Id.* at 158–59.) On redirect examination by the prosecutor, Skipworth acknowledged that no promises had been made to him by any government official in return for his cooperation following his conviction. (*Id.* at 194–95.) On recross examination by defense counsel, Skipworth testified that he had no knowledge of a government recommendation that his sentence be reduced in light of his cooperation. (*Id.* at 205–06.)

In the course of closing argument, counsel for Haskins referred to the government's recommendation that Skipworth's sentence be reduced from twenty to six years, evidenced by an agreement. (*Id.* at 512). Government counsel responded that the government did not agree to recommend a specific reduction of sentence, and that such decision was exclusively that of the court. (*Id.*)

The innuendo raised by the defense at trial was that Skipworth *did not* voluntarily appear as a witness against Haskins.

This is set forth in Haskins' Brief. It is pursued beyond the "reduction in sentence" inquiry to a contention that the government withheld information about a promise to transfer Skipworth to a penitentiary closer to his parents' home in Oklahoma: "During the testimony of Plaintiff's witness, Donald Skipworth, inquiry was made concerning promises or deals the Government had made in return for his testifying. The witness answered omitting any reference to an attempt by the Plaintiff to have him moved from one penal institution to another. The Defendant was not made aware until after cross-examination and furthermore until after the Defendant had put on his defense, that the Plaintiff was in the process of attempting to procure Donald Skipworth's transfer from one penal institution to another via a written memorandum which was written and delivered to the clerk of the court in an attempt to gain the judge's assistance in transferring witness, Skipworth. The transfer allegedly was to assist witness Skipworth in being closer to his family while incarcerated." Brief of Appellant, pp. 32–33.

Haskins argues that because he was not provided with the transfer information, he was deprived of an opportunity (1) to cross-examine Skipworth about it, (2) to call Skipworth in his case-in-chief and questioning him about the government's promise to assist him in the transfer, and (3) to introduce the memorandum in evidence for impeachment purposes.

The record reflects that the trial judge was upset and concerned when it became clear, just after Skipworth's testimony, that an agreement between the United States Attorney's Office and counsel for Skipworth had been entered into and filed with the Clerk in Chief Judge Luther B. Eubank's Court—an apparent attempt to obtain an order directing Skipworth's transfer to the El Reno penal facility in Oklahoma. The trial court clearly declared its concern that the memorandum which at least would have been available to the defense for *further* impeachment of Skip-

worth, was not made known to the court or defense counsel in accord with the pre-trial Order of April 8, 1983. The pretrial Order had required that the government disclose to the defense all exculpatory material pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), including disclosure "of material which may be used to impeach *substantially* the credibility of *key* government witnesses." (R., Vol. I, p. 16.) (Emphasis added.)

The Government argues that the memorandum was not material evidence under *Brady v. Maryland, supra,* nor was it subject to the trial court order of April 8, 1983, *supra,* because it was written only as a matter of convenience and economy for the benefit of the Federal Bureau of Prisons as Skipworth's incarceration in Oklahoma rather than Texas was a matter of convenience for "possible further pretrial preparation and testimony." Brief of Appellee, p. 13. Further, the government argues that because the memorandum did not involve an understanding or agreement as to a future prosecution, the rule in *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972) is applicable: A new trial is not automatically required whenever "a combing of the prosecutor's files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict...." We agree with the government's contention that the subject information was not of such nature that it would have likely changed the verdict. That is not to say, however, that the trial court's concern was not well taken. The government was properly admonished for its carelessness in this matter and the trial court in effect invited defense counsel to move for mistrial. (R., Vol IV, p. 537.) However, counsel for Haskins, after consultation with his client, announced to the court that "my client does not want a mistrial" but "I move to dismiss" on the ground that the memorandum had not been furnished the defendant. (*Id.* at 538.) We must observe that a dismissal order would have created the problem of double jeopardy, whereas the mistrial order would not. Defense counsel later stated that he moved to dismiss rather than for

mistrial because "[m]y client advises me that he doesn't feel that he can take another trial physically, financially or any other way." (*Id.* at 572).

Haskins filed a formal "Renewal of Motion to Dismiss, or in the Alternative Motion for Acquittal Notwithstanding the Verdict" with an accompanying brief. (R., Vol. I, pp. 43–46.) The government responded. By Minute Order, the trial court denied the motions. (*Id.* at 52).

Under all of the circumstances, and in light of Haskins' election not to move for mistrial, we conclude that the failure of the government to disclose the attempts to effect Skipworth's transfer from one penal facility in Texas to one in El Reno, Oklahoma, would not likely have changed the jury verdict, even if the reason for the transfer was that of placing Skipworth much closer to his parents, who were apparently elderly and sick, for more convenient visitation purposes. It is significant, we believe, that the memorandum was written *after* Skipworth testified. Thus, there is no evidence that the memorandum was written in exchange for Skipworth's testimony against Haskins. Further, in our view, the memorandum did not contain exculpatory matter. To be sure, it could have been used by the defense to further impeach witness Skipworth. Even so, it would have been cumulative for impeachment purposes. Defense counsel thoroughly impeached Skipworth about his criminal record, the lies he told in submitting invoices and receiving warrants, and, particularly, the order reducing his sentence after he decided to cooperate with the government. Under all of the circumstances, we hold that the government's apparent inadvertent non-disclosure of the memorandum would not have likely affected the outcome of the trial. *Giglio v. United States, supra; United States v. Crouthers,* 669 F.2d 635 (10th Cir.1982).

WE AFFIRM.