UNITED STATES of America,
Plaintiff-Appellee,

v.

Barney GIRDNER, Defendant-Appellant.

No. 83–2319.

United States Court of Appeals,
Tenth Circuit.

Jan. 29, 1985.

Gary L. Richardson, U.S. Atty., Muskogee, Okl., and Sara Criscitelli, Atty., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Harry Scoufos, Sallisaw, Okl., for defendant-appellant.

Before McKAY, DOYLE and LOGAN, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

After examining the briefs and appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed.R. App.P. 34(a); Tenth Circuit R. 10(e). The cause is therefore ordered submitted without oral argument.

The defendant below and the appellant here, Barney Girdner, Jr., was indicted for conspiracy and mail fraud in the United States District Court for the Eastern District of Oklahoma. Girdner plead guilty to one count of conspiracy. His present effort is an appeal of his conviction and the sentence which he received.

Basically the conspiracy amounted to an effort to return false ballots, that is, those of persons who were not eligible to vote, in an effort to obtain a false result at the polls. This happened during the 1982 primary and runoff primary elections. On June 16, 1983, Girdner, Dan Draper Jr., Joe Fitzgibbon and Faye Newton, were indicted by a federal grand jury. In each of the indictments there was a charge of one count of conspiracy to use the United States mails in furtherance of a scheme to defraud the electorate of the 86th District of Oklahoma of a fair and honest election, in violation of 18 U.S.C. § 371, and nineteen counts of mail fraud, in violation of 18 U.S.C. § 1341. Soon after the indictment Girdner came up on the charge. Girdner entered a plea of guilty to the conspiracy count. In exchange for the guilty plea, the government dismissed the remaining counts against Girdner and agreed not to prosecute several members of Girdner's family who were also involved in the conspiracy. Following the plea of guilty, Judge Seay of the United States District

Court for the Eastern District of Oklahoma sentenced Girdner to five years imprisonment and a $5,000 fine on September 27, 1983. The present appeal followed.

The testimony elicited at the hearing on Girdner's guilty plea, and at the trial of Girdner's co-defendants Dan Draper, Jr. and Joe Fitzgibbon, brings out that Girdner was a candidate for a seat in the Oklahoma House of Representatives in the August 1982 primary election. He and members of his family, in order to help him in the 86th District, devised a scheme for the fraudulent registration of voters who were not legally qualified to vote in the district. Also part of the conspiracy was a submission of fraudulent absentee ballots in the primary and runoff elections. Appellant Girdner persuaded persons living outside the 86th District to register to vote in that district. He then persuaded these newly registered voters to apply for absentee ballots for the primary and runoff elections. Several of the ballots were mailed to the voters in care of the Girdner Grocery Store; other ballots were mailed to post office boxes rented by Girdner and members of his family. Following the Girdners' receipt of the ballots, they were filled out and signed by the voters outside the presence of a notary. Many of the ballots were in fact signed and voted by members of the Girdner family rather than by the voters to whom they were supposed to be sent. Girdner and his family then returned the fraudulent ballots to election officials for tabulation by way of the United States Mails.

Girdner failed to qualify for the 86th District runoff election. Subsequently he undertook to lend his support to Draper in the runoff election. Girdner and members of his family obtained absentee ballots for the runoff and fraudulently voted them for Draper in the same way that they had voted absentee ballots for Girdner in the previous election. Again, the fraudulent absentee ballots were returned to election officials via the United States Mails.

Subsequently Girdner was indicted and in due time he entered a plea of guilty.

Judge Seay questioned him to a great extent in order to ensure that there had been a factual basis for the plea. At that time Girdner admitted that he had participated in a conspiracy with at least notary Faye Newton and his son, John Harv Girdner. He also admitted that he had retained a post office box, arranged for absentee ballots to be mailed to the box, and forged a voter's signature on at least one ballot. He returned fraudulent ballots through the mails. In addition, he noted that his wife, son and sister had forged the signatures on other ballots and that his son and notary Faye Newton had both known the nature and purpose of the scheme.

Girdner testified for the government at the trial of his codefendants, Draper and Fitzgibbon. His character was drawn into issue at that time. The testimony brought out established that Girdner had previously been convicted of filing a false claim with the federal government. Also, his employment with the Oklahoma Highway Patrol had been terminated due to the illegal sale of drivers' license files. Several witnesses also indicated that Girdner's reputation for honesty was poor.

The position of Girdner on this appeal is first, he attacks his conviction, and alleges that the trial court erred in accepting his guilty plea because the indictments did not charge him with a valid federal crime. His second contention here is that the trial court's imposition of a harsher sentence on him than on his co-defendants who did not enter guilty pleas was an abuse of the court's discretion. We disagree with this entire effort on the part of Girdner.

There are two aspects connected with Girdner's attack on his conviction. First he contends that although he used the United States Mails fraudulently to procure absentee ballots and to return fraudulently completed absentee ballots to election officials for tabulation, this did not violate the federal mail fraud statute (18 U.S.C. § 1341). His argument is that 18 U.S.C. § 1341 only reaches use of the mails to defraud victims of their money or property. He reasons that since a conspiracy conviction under 18

U.S.C. § 371 requires a defendant to have conspired to commit a federal crime, his conspiracy conviction must fail if 18 U.S.C. § 1341 does not prohibit absentee ballot fraud specifically.

■ His argument that absentee ballot fraud does not violate this § 1341 does not agree with the interpretation given that section by several courts of appeals. The mail fraud statute is broadly drawn and "generally prohibits any scheme or artifice to defraud which in some way involves the use of the postal system." *United States v. Pearlstein*, 576 F.2d 531, 534 (3d Cir. 1978). This court has recognized that use of the mails in furtherance of conspiracies to deprive citizens of intangible political rights violates 18 U.S.C. § 1341. *See United States v. Primrose*, 718 F.2d 1484 (10th Cir.1983); *United States v. Gann*, 718 F.2d 1502 (10th Cir.1983); *United States v. Neal*, 718 F.2d 1505 (10th Cir.1983). Moreover, other circuits have specifically held that use of the postal system in absentee ballot fraud schemes violates 18 U.S.C. § 1341. *United States v. Clapps*, 732 F.2d 1148, 1153 (3d Cir.1984); *United States v. States*, 488 F.2d 761, 764 (8th Cir.1973), *cert. denied*, 417 U.S. 909, 94 S.Ct. 2605, 41 L.Ed.2d 212 (1974); *see also United States v. Odom*, 736 F.2d 104, 116 n. 13 (4th Cir.1984); *United States v. Schafer*, 726 F.2d 155 (4th Cir.1984). We fully agree with the position taken by those courts and we now hold that the use of the postal system in furtherance of absentee ballot fraud schemes violates 18 U.S.C. § 1341. Inasmuch as the indictment correctly charges Girdner with an underlying federal crime, the indictment for conspiracy also charges a valid federal crime. Thus, appellant's conviction for conspiracy is also valid.

■ The second prong of his attack on his conviction asserts that since no other defendant has yet been finally convicted of conspiracy, his conspiracy conviction should also be vacated. Girdner's contention lacks merit. Defendants Draper and Fitzgibbon, whose convictions are now the subject of pending appeals, were not the only other participants in the absentee ballot fraud scheme. At the time Girdner entered his guilty plea, Judge Seay questioned him extensively in order to ensure that there was a factual basis for his plea. Girdner then indicated that at least two other persons, Faye Newton and John Harv Girdner, had participated with him in the ballot fraud scheme. This testimony adequately demonstrates the existence of a conspiracy, and furthermore it supports Girdner's conviction, even if Draper's and Fitzgibbon's convictions were to be vacated. *See, e.g., Rogers v. United States*, 340 U.S. 367, 375, 71 S.Ct. 438, 443, 95 L.Ed. 344 (1951); *United States v. Patterson*, 678 F.2d 774, 781 (9th Cir.), *cert. denied*, 459 U.S. 911, 103 S.Ct. 219, 74 L.Ed.2d 174 (1982).

■ Turning now to the sentence it is our conclusion that the attack which Girdner makes on that is completely without any merit. His sentence is within the statutory limits, but he asserts that because it is more severe than the sentences his co-defendants received after their trial, it violates the equal protection clause of the Constitution. We disagree with this also. We have previously held that "absent specific allegations of constitutionally impermissible motives on the part of the trial court, a sentence within the statutory limits is * * * not open to review." *United States v. Alfonso*, 738 F.2d 369, 373 (10th Cir.1984).

In the case at bar Girdner makes no specific allegations. Moreover the record indicates that the factors that the trial court did consider in sentencing Girdner— the degree of his involvement in devising the absentee ballot fraud scheme, his character and the number of elections in which he was involved in questionable conduct— were both relevant and valid, and the evidence was valid and acceptable. The sentence upon which the trial court ultimately decided was within the permissible range of the trial court's discretion.

We must conclude that the sentence pronounced by the trial court was fully justified and valid. Thus, we do not disturb it.

Instead we affirm the district court's decision with respect to the entire case.